## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CHRISTOPHER TOTH,

          Plaintiff,

v.                                                  CIVIL ACTION NO.   2:16-cv-09793

A&R LOGISTICS, INC.,

          Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant A&R Logistics, Inc.'s Motion for Summary Judgment. (ECF No. 65.) For the reasons below, the Court **DENIES** the motion.

### I.   BACKGROUND

This case arises out of an injury Plaintiff Christopher Toth suffered on April 7, 2014, while operating the bottom hopper valve on the trailer attached to a truck he drove that day during his employment with Defendant. (ECF No. 3-1 at 3–4 ¶¶ 3, 7–8.) According to the Complaint, the valve "kicked back" and caused a serious, permanent injury to Plaintiff's left arm. (*Id.* at 4 ¶¶ 7–8.)

Plaintiff originally filed this suit in the Circuit Court of Wood County, West Virginia, on April 7, 2016. (*Id.* at 3.) The Complaint asserts a single deliberate intent cause of action in violation of West Virginia Code § 23-4-2(d)(2). Plaintiff seeks relief in the forms of general and compensatory damages in addition to future earning capacity, interest, and costs. (*Id.* at 6.)

1

Defendant removed the case to this Court on October 17, 2016, asserting diversity jurisdiction as the basis of removal pursuant to 28 U.S.C. § 1332. (ECF No. 3 at 1–2.) Defendant's summary judgment motion was filed on October 25, 2017. (ECF No. 65.) Plaintiff responded to the motion on November 9, 2017, (ECF No. 69), and Defendant filed a reply on November 16, 2017, (ECF No. 71). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

2

U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

### III. DISCUSSION

Plaintiff alleges that Defendant violated West Virginia Code § 23-4-2(d)(2) by "consciously, subjectively and deliberately form[ing] the intention to produce the specific result of the injuries suffered . . . ." (ECF No. 1-1 at 5.) Generally, employees who are injured at their place of work must seek compensation through the West Virginia Workers' Compensation Act. *See* W. Va. Code § 23-2-6 (2003); *State ex rel. Frazier v. Hrko*, 510 S.E.2d 486, 493 n.11 (W. Va. 1998). This legislation serves the dual purposes of allowing an employee to recover even when he is at fault while immunizing employers from civil litigation. "There is an exception to this immunity, however, when the employee's injury is the result of the employer's 'deliberate intention' to cause that injury." *Helmick v. Potomac Edison Co.*, 406 S.E.2d 700, 705 (W. Va. 1991).

The standard for "deliberate intention" as codified by West Virginia law at the time of Plaintiff's injury provides, in pertinent part, the following:

> (2) The immunity from suit provided under this section and under section six-a, article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:
>
> . . .
>
> > (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
> >
> > > (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

3

>(B) That the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
>(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
>(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally; and
>
>(E) That the employee exposed suffered serious injury or death as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d) (2005).

Success on a deliberate intent claim hinges on the existence of evidence proving all five specific requirements enumerated above in subparagraphs (A) through (E). *See Keesee v. Gen. Refuse Serv., Inc.*, 604 S.E.2d 449, 459 (W. Va. 2004) (citing Syl. pt. 2, *Mayles v. Shoney's, Inc.*, 405 S.E.2d 15 (W. Va. 1990)).[1] "Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors." *Marcus v. Holley*, 618 S.E.2d 517, 529 (W. Va. 2005) (quoting *Mumaw v. U.S. Silica Co.*, 511 S.E.2d 117, 120 (W. Va. 1998)).

---

[1] *See also Master Mech. Insulation, Inc. v. Simmons*, 753 S.E.2d 79, 86 (W. Va. 2013); Syl. pt. 5, *Deskins v. S.W. Jack Drilling Co.*, 600 S.E.2d 237 (W. Va. 2004) (quoting Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385 (W. Va. 1991)).

*A.   Specific Unsafe Working Condition*

Subparagraph (A) "requires proof by the employee of a specific unsafe working condition which presented a high degree of risk and a strong probability of serious injury or death." *McComas v. ACF Indus.*, 750 S.E.2d 235, 240 (W. Va. 2013). Plaintiff argues that the specific unsafe working condition in this dispute is the "failure to provide mandatory training to a driver prior to sending him on a solo trip to unload a pneumatic trailer."[2] (ECF No. 69 at 22.) This Court has recognized that a failure to provide legally-required training can serve as an unsafe working condition for purposes of the statute at issue. *See Skaggs v. Kroger Co./Kroger Ltd. P'Ship I*, 788 F. Supp. 2d 501, 506 (S.D. W. Va. 2011) (citing *Arnazzi v. Quad/Graphics, Inc.*, 621 S.E.2d 705, 707 (W. Va. 2005)).

Plaintiff has submitted testimony supporting the notion that the lack of proper training on how to unload the type of trailer involved in this case presents a high degree of risk and a strong probability of serious injury. For example, Dirk Schulthesis, a former dispatcher for Defendant, testified that the trailer operated by Plaintiff requires specialized training and that serious injury may occur in the absence of proper training. (*See* ECF No. 69-3 at 2, 4 ("Q. . . . If a person isn't properly trained on [the loading and unloading process], they could be exposed to a risk of serious injury or could expose others around them to a risk of serious injury; right? . . .   A. Yes."), 8 (testifying that, as a former dispatcher, he would not send an untrained employee to drive and

---

[2] The Court notes that the Complaint appears to allege that the unsafe working condition is the operation of the unloading valve, which directly caused the injury. (*See* ECF No. 1-1 at 4 ¶ 8.) However, Plaintiff's response to the pending motion focuses on his allegation that Defendant failed to properly train him. (*See* ECF No. 69 at 12, 22.) In light of Plaintiff's response to the dispositive motion, the Court will consider the failure to train as the alleged unsafe working condition. *Cf. Walton v. Baker Hughes Oilfield Operations, Inc.*, No. 1:16CV141, 2017 WL 5196643, at *6 (N.D. W. Va. Nov. 9, 2017) ("Given that Walton bears the burden at this stage to establish each element, the Court defers to his description of the allegedly unsafe condition." (internal citations omitted)); *Bevins*, 2014 WL 7236415, at *4.

5

unload a trailer by himself because it "would present him a risk of serious injury if he did that").) Rodney Turner, one of Defendant's employees who trained individual drivers at the company, also testified that the failure to train employees creates an unsafe working condition and that one purpose of such training is to prevent injuries like Plaintiff's. (*See* ECF No. 69-2 at 9, 13 ("Q. Right. And if you don't know the process fully, you're not trained on it, you're at risk of getting hurt . . . . We've established that, right? A. Yeah.").) The Court notes that neither Mr. Schulthesis nor Mr. Turner appears to be a safety expert. However, their testimonies lend support to the notion that the failure to train individuals on how to unload pneumatic trailers creates a high degree of risk and a strong probability of serious injury. The expert report submitted by Plaintiff and prepared by Samuel T. Daugherty, Safety Specialist and Owner of DCT Safety Solution, also attests to the fact that the failure to train creates an unsafe working condition. (*See* ECF No. 69-7 at 2 ("Mr. Toth was subjected to an unsafe environment when he was instructed to perform a task that he did not feel comfortable with and was not properly trained to conduct according to manufacturer and industry standards.").) Based on this, the trier of fact could find for Plaintiff on the first statutory element, and the Court, therefore, finds a genuine issue of material fact as to subparagraph (A). Of course, this element is contingent on proof that the training is legally mandated or required by industry standards, *see Skaggs*, 788 F. Supp. 2d at 506, which is addressed below.

    *B.   Actual Knowledge*

Proving the employer's "subjective realization and appreciation" of the existence of a specific unsafe working condition, as required by subparagraph (B), "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence . . . ."

6

*Nutter v. Owens-Illinois, Inc.*, 550 S.E.2d 398, 403 (W. Va. 2001). The statute does not mandate evidence of "prior similar incidents or complaints," *see id.*, but even proof that an employer knew of another employee's previous injury from the same unsafe condition does not necessarily establish this requirement. *See McBee v. U.S. Silica Co.*, 517 S.E.2d 308, 312 (W. Va. 1999). In addition, evidence that "the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition" is not enough. *See Deskins v. S.W. Jack Drilling Co.*, 600 S.E.2d 237, 242 (W. Va. 2004) (quoting Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385 (W. Va. 1991)). "Instead, it must be shown that the employer actually possessed such knowledge." *Id.*

As evidenced by the testimony outlined above from Mr. Schulthesis and Mr. Turner, Plaintiff's witnesses state that they understood that the failure to train Defendant's employees on how to properly unload a pneumatic trailer poses a risk of serious injury. (*See* ECF No. 69-2 at 9, 13; ECF No. 69-3 at 2, 4, 6–7; *see also* ECF No. 69-4 (Leonard Dep.) at 3 ("Q. A person with no prior dry bulk goods experience . . . would require extensive training to learn how to properly and safely do that task; correct? A. Yes. Q. Would an employee be sent out to drive a truck across state lines by himself and to unload a loaded trailer if he had not yet completed his training? A. No.").) There is also evidence that Defendant knew that Plaintiff was not trained prior to sending him out on the April 7, 2014, out-of-state haul. (*See* ECF No. 69-4 (Leonard Dep.) at 2 ("Q. Did you ever give [Plaintiff] any type of training? A. No. I mean, . . . I don't really recall."), 4 ("Q. And according to what you see here, he hadn't finished training had he? A. That's what this document says."), 6–7 ("Q. Based upon what you see there, had Chris Toth been fully trained and released to solo duty at that time? A. Not necessarily."), 11 ("Q. Have you seen any

7

documents, checklists, anything filled out that says 'I've signed off and Chris Toth is safe to be turned loose and run a load by himself?' A. No."); *see also* ECF No. 69-7 at 2 (Daugherty Report) ("Mr. Toth was not properly trained on the specific procedures to properly off-load materials from a pneumatic trailer.").)

Further, it may be inferred from Mr. Leonard's testimony that other employees have been sent on out-of-state hauls requiring them to unload a pneumatic trailer even if those employees were not fully trained. (ECF No. 69-4 at 4 ("Q. Would it be your standard practice as the supervisor of the facility to send an individual . . . who was not yet fully trained . . . to go unload a trailer? A. That depends. Q. Depends on what? A. On the -- if he's -- if he's available to do the job. If he doesn't need training . . . ."), 4–5 ("Q. . . . [W]ould an employee be sent off out of state to go drive a truck by themself and unload a loaded trailer before they've had the chance to complete the academy or the course where they're sent off [for] a week to headquarters? . . . A. If the trainer has cleared him for -- to go."), 10 ("Q. . . . Would you, as the boss, have directed somebody to go run a load by themself if you knew they didn't have the corporate training yet that it says they're required to have in this document? A. Only if the trainer advised he can do that."). *But see id.* at 4 ("A. . . . [I]f he hasn't finished training, I wouldn't send him.").)

Defendant's motion and reply in support of the motion focus on Defendant's knowledge about whether the valve that injured Plaintiff presented a risk of serious injury. As stated above, however, the Court understands Plaintiff's argument to be that the unsafe working condition was Defendant's failure to train Plaintiff on how to operate the pneumatic trailer at issue. Plaintiff has presented some witness testimony from a facility supervisor, (*see* ECF No. 69-4 at 4), that a trier of fact may find supportive of the position that Defendant had actual, subjective knowledge that

failing to train its employees on how to properly unload a pneumatic trailer created an unsafe working condition. *Cf. Bell v. Vecellio & Grogan, Inc.*, 447 S.E.2d 269, 274–75 (W. Va. 1994) (finding that subparagraph (B) was satisfied where, in part, "supervisory personnel was well aware" of the unsafe working condition); *see also Coleman Estate ex rel. Coleman v. R.M. Logging, Inc.*, 700 S.E.2d 168, 177 (W. Va. 2010) ("Although the Plaintiffs' evidence [of the employer's subjective knowledge] is circumstantial rather than direct, we have recognized that states of mind must often be proved by circumstantial evidence."). Viewing the facts in the light most favorable to Plaintiff, as the Court must do at this juncture, *see Adickes*, 398 U.S. at 157, the Court finds a genuine dispute of material fact regarding whether Defendant had specific knowledge of the unsafe working condition at issue here.

    C.    *Violation of Industry Standard*

In its simplest form, subparagraph (C) can be divided into the following two requirements:

> First, the specific unsafe working condition must have been a violation of either (1) a state safety statute, rule or regulation, (2) a federal safety statute, rule or regulation, or (3) "a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." Second, such statute, rule, regulation, or standard must have been "specifically applicable to the particular work and working condition involved," as opposed to "generally requiring safe workplaces, equipment or working conditions."

*Bevins v. Apogee Coal Co., LLC*, No. 2:13–cv–24264, 2014 WL 7236415, at *3 (S.D. W. Va. Dec. 17, 2014) (quoting W. Va. Code § 23-4-2(d)(2)(ii)(C)), *aff'd*, 635 F. App'x 117 (4th Cir. 2016).

Without evidence that the employer violated any state or federal safety statute, rule, or regulation or well-known industry standard, subparagraph (C) of the statute will not be satisfied. *See Handley*, 620 F. Supp. at 438–39, 442–43. A showing that the employer violated statutes or

9

regulations generally requiring safe workplaces is insufficient to establish this element. *See Tolley v. ACF Indus., Inc.*, 575 S.E.2d 158, 167 (W. Va. 2002). Rather, "the statute or standard must *specifically* address the unsafe working condition in question." *Greene v. Carolina Freight Carriers*, 663 F. Supp. 112, 115 (S.D. W. Va. 1987) (emphasis in original) (providing that the purpose of this requirement is "[t]o put the employer on notice, and to evidence its egregious conduct"); *see also Bennett v. Kroger Co.*, No. 97-1938, 1998 WL 398823, at *2 (4th Cir. Jun. 15, 1998) (per curiam) (unpublished opinion) (finding general safety regulations applicable to "all permanent places of employment" were insufficient to satisfy the third element of an deliberate intent action). In analyzing a cited regulation that was allegedly violated, the West Virginia Supreme Court of Appeals ("WVSCA") focuses on whether that regulation imposes an "affirmative duty" on the employer as opposed to constituting a mere "general safety requirement." *See McComas*, 750 S.E.2d at 241 (citing *Ryan v. Clonch Indus., Inc.*, 619 S.E.2d 756, 763 (W. Va. 2006)); *see also Smith v. Metso Paper USA, Inc.*, No. 1:13CV266, 2014 WL 1404727, at *4 (N.D. W. Va. Apr. 10, 2014) (applying *McComas* to conclude that the use of the word "shall" in the cited regulation, which was "aimed specifically at the tiered stacking of materials," imposed an affirmative duty on the employer).

Again, the alleged specific unsafe working condition at issue here is the failure to properly train Plaintiff and other employees on how to unload a pneumatic trailer. Thus, in order to satisfy subparagraph (C), the failure to train employees on how to properly unload a pneumatic trailer must violate a specifically applicable state or federal statute, rule, or regulation or industry safety standard. While the Complaint does not provide a specific statute, rule, regulation, or standard

10

that allegedly was violated by a failure to train,[3] Plaintiff argues in the briefing that the alleged unsafe working condition was a violation of an industry standard—specifically, American National Standards Institute, American Society of Safety Engineers ("ANSI/ASSE") Z490.1-2009.[4] (*See* ECF No. 69 at 10–12 (stating that this standard "sets forth 'criteria for accepted practices in safety, health, and environmental training'").) Based on the legal standard provided by Federal Rule of Civil Procedure 56, the Court will limit the analysis to Plaintiff's allegations in his response.

According to Plaintiff and his expert, Mr. Daugherty,[5] ANSI/ASSE Z490.1-2009 is "specifically applicable to the task of unloading a pneumatic trailer" within the trucking industry as evidenced by the following passage:

---

[3] In the Complaint, Plaintiff tracks the statute's language and generally alleges that "[t]he specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well known safety standard within the industry or business of the employer." (ECF No. 3-1 at 5 ¶ 12(iii).)

[4] Plaintiff also appears to allude to a violation of Occupational Safety and Health Administration ("OSHA") standards in the response, but he does not cite a specific OSHA rule that was allegedly broken. Nevertheless, because the Court finds that there is a dispute of material fact regarding whether ANSI/ASSE Z490.1-2009 is "a commonly accepted and well-known safety standard" within the trucking industry and specifically applicable to the operation of a pneumatic trailer, *see Bevins*, 2014 WL 7236415, at *3, the Court will focus on that single standard.

[5] Almost five months after the pending dispositive motion became ripe, Defendant filed a Motion in Limine to Limit Testimony of Plaintiff's Expert Witness Samuel T. Daugherty. (ECF No. 81.) In that motion in limine, Defendant challenges for the first time Mr. Daugherty's qualifications and the reliability of his opinions, labeling him as "nothing more than a lay witness in disguise." (*Id.* at 5.) Attached to the motion is a full transcript of Mr. Daugherty's deposition, which Defendant argues precludes Mr. Daugherty from being qualified as an expert under the standards provided by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In opposition, Plaintiff argues that Mr. Daugherty's experience renders him "qualified to offer his expert opinion that Defendant violated consensus safety standards in the trucking industry, as well as applicable [OSHA] and [ANSI/ASSE] standards which are applicable in the commercial trucking industry." (ECF No. 88 at 2.) The Court finds it prudent to briefly address this issue.

Federal Rule of Evidence 702 confers on a district court the discretion to admit testimony from expert witnesses based on the following standard:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> Quality training is required to ensure that workers and safety, health, and environmental professionals have the knowledge, skills, and abilities necessary to protect themselves and others in the workplace. . . . This Standard covers all facets of training, including training development, delivery, evaluation, and management of training and training programs.[6]

(ECF No. 69 at 11–12 (indicating that this language is included in the standard's "Foreword" section); *see also* ECF No. 69-7 at 3–4.) As far as quality training is concerned, the cited standard states as follows:

> [A training program] *shall*, at a minimum include . . . program documentation and record keeping [and] a written training program plan document how the above elements will be accomplished. [The] training program *shall* be planned and implemented to ensure that . . . adequate information is maintained to provide a history of training events and trainee completion. . . . Criteria for completing a training course or event *shall* be [e]stablished by the training provider in advance of any training event. These criteria *shall* be uniformly adhered to in all training event[s]. Criteria for completion shall indicate test scores or similar qualitative measures of success, including requirements for minimum attendance or participation. . . . Observation of performance *shall* be used when necessary to verify that the trainee can demonstrate the targeted skills or abilities under actual work conditions.

---

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Fourth Circuit has noted that, under this evidentiary rule, "an expert must have either knowledge skill, experience, training, or education. These are disjunctive; an expert can qualify to testify on any one of the grounds." *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 150 F.3d 376, 380–81 (4th Cir. 1998) (citing *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). The district court only acts as a "gatekeeper" and does not consider whether the offered opinion is correct. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (citation omitted) (noting that a court should be concerned only with whether "an expert witness . . . possess[es] some specialized knowledge or skill or education that is not in possession of the jurors").

The Court has considered the parties' arguments relative to the motion in limine and remains mindful that its role is to act only as a gatekeeper to ensure Mr. Daugherty is qualified and that his testimony would be useful, relevant, and reliable to the trier of fact. After considering the proffered expert report and reviewing Mr. Daugherty's deposition and curriculum vitae, the Court finds that, at this stage of the litigation, Mr. Daugherty is minimally qualified to offer an opinion in the area of employee training within the commercial trucking industry. The strength of Mr. Daugherty's conclusions and his credibility, of course, will be issues for the jury's consideration. Consistent with this finding, the Court will take into account the expert report attached to Plaintiff's response to the pending summary judgment motion, (ECF No. 69-7).

[6] The Court notes that a copy of the standard itself is not included on the record, and the parties do not provide a citation allowing the Court to independently verify the quoted language.

12

(ECF No. 69 at 12 (second and third alterations in original) (alterations omitted) (emphasis in original).) Lastly, Mr. Daugherty's report touches on the following requirements from the standard regarding how training must be delivered to employees:

> The training program shall, at a minimum, include the following elements:
>
> Training development, including needs assessment, learning objectives, course content and format, resource material, and criteria for course completion. (ANSI/ASSE Z490.1-2009 3.2)
>
> . . .
>
> Multiple delivery methods may be used in a single training course or event. The training provider should consider a variety of methods, including but not limited to on-the-job training, lecture, computer based training, discussion, classroom exercises, demonstrations, guided practice, activity-based interactive group(s), and distance learning.

(ECF No. 69-7 (emphasis omitted) (quoting ANSI/ASSE Z490.1-2009).)

Defendant argues that this industry standard does not meet the specificity requirement of subparagraph (C) because "[i]t is nothing more than a generalized description of what a training program should be." (ECF No. 66 at 13–14 ("It contains nothing which is applicable to the operation of dry bulk trailers or anything else remotely part of this accident.").) Defendant further avers that the Court should ignore Plaintiff and his expert's reliance on ANSI/ASSE Z490.1-2009 as the alleged industry standard because Mr. Daugherty's Rule 26(a)(2) report and deposition appear to rely only on 29 U.S.C. § 654(a) as the standard at issue, which Mr. Daugherty later conceded is simply a general Occupational Safety and Health Administration standard. (ECF No. 71 at 2.)

Notwithstanding Defendant's belief that the Court should ignore ANSI/ASSE Z490.1-2009 in its analysis of subparagraph (C) because Plaintiff did not raise it until the response, Defendant

13

relies on *Skaggs* and *Arnazzi* to support its argument that the standard does not satisfy the statutory element at issue. (*See id.* at 3–4 (citing *Skaggs*, 788 F. Supp. 2d at 506; *Arnazzi*, 621 S.E.2d at 705).) The Court does not find those cases as persuasive. The regulations allegedly violated in *Skaggs* and *Arnazzi* indeed specifically mandated certain training that employees must undergo before operating a pallet jack and a forklift, respectively, which led to the plaintiffs' injuries. However, the courts' rationales did not foreclose the possibility that regulatory training requirements applying to a broader set of skills or industry—as opposed to the operation of a specific machine—may nonetheless satisfy subparagraph (C). Under Defendant's line of argument, Plaintiff could only succeed under his failure to train theory if he proffered a regulation or industry standard that specifically mandates the way in which employers train employees on how to operate a pneumatic trailer. The statute and case law are strict but not so demanding. The other cases relied upon by Defendant do not analyze regulations mandating training but rather regulations requiring employers to maintain safe and proper operating conditions as to certain machinery, and, thus, the Court finds them easily distinguishable.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided adequate evidence through an expert's report to show that the failure to train him was a violation of a commonly accepted and well-known safety standard within the trucking industry. *Cf. Walton*, 2017 WL 5196643, at *8–9.[7] Defendant contests Plaintiff's position that the standard is specifically related to the work Plaintiff was performing at the time of the accident. Plaintiff was operating a pneumatic trailer when he was injured, which was within the scope of his duties

---

[7] The Court notes that the parties in *Walton* did not dispute that ANSI/ASSE Z49.1-2009 is a commonly accepted standard within the oil and gas extraction industry for purposes of W. Va. Code § 23-4-2(d)(2)(ii)(C). Nevertheless, the court in *Walton* determined that a dispute of material fact regarding whether the plaintiff was provided with industry-mandated training precluded a finding in favor of the defendant on this element.

as a driver for Defendant, a trucking company. Mr. Daugherty wrote in his report that ANSI/ASSE Z490.1-2009 is "applicable to all federal governing regulatory agencies or administrations" and that "OSHA regulations govern the safety and health of the workers and the responsibilities of employers to ensure their safety . . . in other places truckers go to deliver and pick up loads throughout the country." (ECF No. 69-7 at 4 ("OSHA has jurisdiction over off-highway loading and unloading . . . .").) Defendant argues that ANSI/ASSE Z490.1-2009 is not a specific enough regulation because it "does not in any way discuss the trucking industry . . . ." (ECF No. 71 at 6.) However, if the standard does in fact direct the way in which employers in the trucking industry train their employees, as Plaintiff argues, it specifically addresses the alleged unsafe working condition in question here. *See Greene*, 663 F. Supp. at 115. The standard does not appear to be a general safety regulation applicable to "all permanent places of employment." *See Bennett*, 1998 WL 398823, at *2; *see also Tolley*, 575 S.E.2d at 167. Its language, quoted by Plaintiff and his expert, indicates that it imposes an "affirmative duty" on Defendant and similarly situated employers. *See McComas*, 750 S.E.2d at 241; *see also Smith*, 2014 WL 1404727, at *4. Given Plaintiff's expert report and Defendant's opposition to the report's conclusion about the alleged industry standard, there is a genuine dispute of material fact with regard to subparagraph (C).

    D.   *Intentional Exposure*

To satisfy subparagraph (D), there "must be some evidence that, with conscious awareness of the unsafe working condition . . . , an employee was directed to continue working in that same harmful environment." *Tolley*, 575 S.E.2d at 168. The Court notes that as explained above, there is a dispute of material fact regarding whether Defendant had actual knowledge of the unsafe

15

working condition—the failure to train. It will be assumed for purposes of this subparagraph that Defendant had conscious awareness that Plaintiff was not properly trained how to operate the pneumatic trailer by which he was injured.

Defendant's motion and reply focus on the fact that Plaintiff has not presented evidence that Defendant knew that the trailer's valve could kick back in the way it did when it injured Plaintiff. (ECF No. 66 at 18; ECF No. 71 at 11.) A faulty valve is not the alleged unsafe working condition, however. The unsafe working condition is the failure to train Plaintiff knowing that the failure to train individuals on how to unload pneumatic trailers creates a high degree of risk and a strong probability of serious injury. Thus, the Court does not agree that Defendant must have had knowledge that an arm injury was imminent or that the trailer's valve could kick back and injure someone. (*Cf.* ECF No. 69-2 at 4 (Turner Dep.) ("Q. Would you agree with me that one of the hazards that exists to a worker would be the potential for injury during loading or unloading to the hands, arms, legs, or face? A. Yes.").) To satisfy this element, Plaintiff must show that Defendant knew that Plaintiff was not trained on how to operate a pneumatic trailer and that Defendant nonetheless directed Plaintiff to go on an out-of-state haul and unload the trailer at the destination.

As noted above Rodney Turner provided testimony supporting the argument that Plaintiff was not properly trained. (*See* ECF No. 69-2 at 7 (providing that Plaintiff was not fully trained the day of the accident).) Mr. Turner further stated in his deposition that despite that lack of training, Plaintiff was directed to go out on his own to perform an out-of-state haul. Mr. Turner testified as follows:

> Q. Somebody at the company made the decision to send him off on his own -- correct? -- on the day of April 7th?

16

. . .

A. Yes.

. . .

Q. Okay. You agree with me that all those things he was required to be trained and instructed on before he's turned loose, the company failed to provide him that training before he was sent off on April 7th; correct?

. . .

A. Yes.

(*Id.* at 9.) It is undisputed that Defendant directed Plaintiff to complete an out-of-state haul by himself on April 7, 2014. That fact, combined with the assumption that Defendant knew about the alleged unsafe working condition and that Plaintiff was not properly trained at the time of his injury, supports a finding that Defendant intentionally exposed Plaintiff to the unsafe working condition. However, Defendant argues that it did not intentionally expose Plaintiff to any unsafe working condition, which leads to the conclusion that there is a dispute of material fact as to subparagraph (D).

### *E. Proximate Cause*

The final subparagraph of the deliberate intent analysis requires evidence that Plaintiff "suffered serious compensable injury . . . as a direct and proximate result of the specific unsafe working condition." W. Va. Code § 23-4-2(d)(2)(ii)(E). This proximate cause requirement is statutory, but "proximate cause" itself is defined pursuant to the common law as adopted by the WVSCA. That court has held that "[t]he proximate cause of an event is that cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred." *Tolley v. Carboline Co.*, 617 S.E.2d 508, 512 (W. Va. 2005) (quoting

17

*Johnson v. Mays*, 447 S.E.2d 563, 568 (W. Va. 1994)). The WVSCA in *Arnazzi* noted that "[i]t is well established in West Virginia that ordinarily the issue of proximate cause is a jury question to be decided based upon the totality of the evidence." 621 S.E.2d at 708. Proximate cause becomes an issue for a jury's determination "when the evidence pertaining to [it] is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." *Id.* (quoting Syl. pt. 7, *Stewart v. George*, 607 S.E.2d 394 (W. Va. 2004)). In determining that this issue was one to be decided by the trier of fact, the *Arnazzi* Court narrowed the question for situations like this when a plaintiff's injury allegedly was the result of an employer's failure to train. *Id.* at 708–09 & n.5 ("[T]he finder of fact must look at the nature of the training and the accident or injury and determine if there is a proximately causal connection.").

As a preliminary matter, it is undisputed that Plaintiff suffered a serious injury while on the job. The dispute is whether the failure to train Plaintiff directly and proximately caused that injury. Again, Mr. Turner testified that one of the hazards an employee is exposed to when unloading a pneumatic trailer without full training is an arm injury. (*See* ECF No. 69-2 at 4.) While Turner does not reference the trailer's valve that kicked back or the likelihood of its occurrence, his testimony lends support to a finding that a lack of training may directly result in an arm injury, which is exactly what Plaintiff suffered. Defendant, to the contrary, argues that there is "absolutely *no evidence*" to support a finding of proximate cause. (ECF No. 66 at 18 (emphasis in original); *see also* ECF No. 66 at 10 (arguing that Plaintiff has not shown that any potential training would have prevented his injury); ECF No. 69-7 (Daugherty Report) at 7 (concluding that Plaintiff's injury was the "direct and proximate result" of Defendant's failure to

18

train him).)  Despite Defendant's assertion, reasonable persons may differ as to whether Mr. Turner's testimony and Mr. Daugherty's report support the causation element, and the trier of fact should have the opportunity to take into consideration the totality of the evidence in determining this issue.  *Cf. Arnazzi*, 621 S.E.2d at 708–09 & n.5.  Thus, viewing the evidence in the proper light, the Court finds a genuine dispute of material fact with regard to subparagraph (E) of the statute.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, (ECF No. 65), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 12, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE